**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ALLSTATE INSURANCE COMPANY,**

                       **Plaintiff(s),**           **CASE NUMBER: 06-15382**
                                            **HONORABLE VICTORIA A. ROBERTS**

**v.**

**ROMAN FRANKEL, NEW START, INC.,**
**THE HEALING PLACE, LTD.,**
**ANOTHER STEP FORWARD, INC.,**
**THP INTENSIVE SERVICES, INC., and**
**BRUCE LESSIEN, M.D.,**

                       **Defendant(s),**

**And**

**ROMAN FRANKEL, NEW START, INC.,**
**THE HEALING PLACE, LTD.,**
**ANOTHER STEP FORWARD, INC.,**
**THP INTENSIVE SERVICES, INC., and**
**BRUCE LESSIEN, M.D.,**

                       **Counter-Plaintiff(s),**

**v.**

**ALLSTATE INSURANCE COMPANY,**

                       **Counter-Defendant(s).**

_____/

## OPINION AND ORDER

**I.    BACKGROUND AND PROCEDURAL HISTORY**

    Allstate Insurance Company ("Allstate") filed a Complaint against Defendants on

October 25, 2006 in Oakland County Circuit Court.  The case was removed here on

December 4, 2006.  The primary issue is whether the defendant facilities ("Rehabilitation Facilities") were required to be licensed as psychiatric units and/or adult foster care facilities in order for their services to be considered "lawfully rendered" within the meaning of Michigan's No-Fault Statute, MCLA §500.3101 *et seq.*

On July 13, 2007, Allstate filed a Second Amended Complaint alleging: (1) fraudulent and innocent misrepresentation; (2) unjust enrichment; (3) fraud and silent fraud; (4) practicing psychology and psychiatry without a license; (5) providing medical services without a license; (6) illegal fee splitting; (7) corporate practice of medicine; (8) civil conspiracy; and (9) breach of statutory duty.

Defendants Dr. Roman Frankel, New Start, Inc. ("New Start"), The Healing Place, Ltd. ("THP"), Another Step Forward, Inc. ("ASF"), and THP Intensive Services, Inc. ("THP Intensive") filed a Counter-Complaint alleging tortious interference with a contractual relationship, tortious interference with a business expectancy, and fraud and misrepresentation.

On November 20, 2007, Allstate filed a "Motion for Leave to File a Motion for Summary Disposition."  Allstate believes it was entitled to judgment as a matter of law based on *Healing Place at N. Oakland Med. Ctr. v. Allstate Ins. Co.*, 277 Mich.App. 51 (2007) ("*Healing Place*").  It contends that the *Healing Place*'s holding - that THP and New Start were not properly licensed to lawfully render services within the meaning of MCLA §500.3157 (and, therefore, not entitled to be paid for services rendered) - is dispositive.

The Court denied Allstate's motion without prejudice and stayed these proceedings because Defendants filed a motion for reconsideration of the *Healing Place*

2

decision.  The motion for reconsideration was denied, and the Michigan Supreme Court denied the application for leave to appeal.  This Court lifted the stay on September 8, 2008.

Now before the Court is Allstate's "Motion for Summary Judgment."  (Doc. #59). Allstate seeks reimbursement of $1,503,977.58 in no-fault automobile personal protection insurance benefits it paid New Start, THP, and ASF between November 1, 1998 and November 1, 2006 for services provided Roger Haines, Matthew Mullins, Steven Nucci, Johnny Hamilton, Jeremy Cottrell, Tracie Hopkins, Joseph Peregord, and Calvin Clark.  The essence of Allstate's motion is that neither the Rehabilitation Facilities nor Dr. Frankel had the proper license to "lawfully render" services within the meaning of MCLA §500.3157.  Allstate says the "lawfully rendered" requirement must be met before it becomes obligated to pay no-fault benefits.

THP Intensive is not listed as a payee on the chart Allstate provides as Exhibit F to its summary judgment motion.  Therefore, the services THP Intensive provided Allstate's insureds, and whether it was properly licensed, are not now part of this Court's considerations.

Oral argument was heard on April 29, 2009.  Allstate filed a supplemental brief on May 6, 2009.  Defendants filed a supplemental brief on May 14, 2009

Allstate's motion is **GRANTED IN PART AND DENIED IN PART**.  The Court finds the following as a matter of law, for reasons set forth in this Opinion and Order:

(1)     Defendants are entitled to no-fault insurance benefits: (a) if the services they provided were reasonably necessary for the insureds' care, recovery, or rehabilitation; and (b) the services provided were:  (i) within the scope of the Rehabilitation Facilities' operating licenses; (ii) rendered by individuals who did not need a license to provide the services; or (iii) rendered by individuals who

had the requisite license.

(2)     Allstate must pay the individual or facility who lawfully rendered the services.  For example, if an individual lawfully rendered services that the facility itself could not render because it required a license to perform that service, Allstate must pay the individual who lawfully rendered services, not the facility.

(3)     *Healing Place* is not dispositive.

(4)     THP meets the statutory definition of "psychiatric unit."  Allstate is, therefore, entitled to reimbursement for any psychiatric services that were unlawfully performed by either THP or individuals not licensed to practice Psychiatry.

(5)     Allstate is entitled to reimbursement for the psychological services Dr. Frankel provided Allstate's insureds at New Start on 1/3/02, 1/8/02, 2/5/02, 2/19/02, 3/12/02, 3/19/02, 3/27/02, 4/9/02, 4/17/02, 4/23/02, 5/1/02, and 7/16/02 because Dr. Frankel held himself out as a Psychologist, rendered services as such, but was not licensed to render psychological services.

(6)     Allstate is entitled to reimbursement for the psychotherapy services Dr. Frankel unlawfully rendered Mr. Nucci from February 1, 2003 through June 4, 2003.

(7)     If THP provided Allstate's insureds services that were within its operating license; or, individuals lawfully performed services other than psychiatric at THP, Defendants are entitled to receive no-fault insurance benefits.

In addition, the Court finds genuine issues of material fact exist concerning whether Dr. Frankel fraudulently concealed that he was not a licensed Psychologist, and whether the Rehabilitation Facilities fraudulently concealed that they did not have psychiatric unit and/or adult foster care licenses.

## II.     STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be

4

read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## III.    APPLICABLE LAW AND ANALYSIS

Defendants present several procedural challenges that they believe bar this litigation and bar the Court's exercise of jurisdiction.

### A.    Procedural Arguments

#### 1.    Challenge to Corporate Form

Defendants rely on *Miller v. Allstate Ins. Co.*, 481 Mich. 601 (2008) for the proposition that Allstate cannot challenge the Rehabilitation Facilities' corporate form.

Defendants' reliance on *Miller* is misplaced. Allstate does not challenge the

Rehabilitation Facilities' corporate form under the Business Corporations Act ("BCA") as it did in *Miller*, nor does Allstate argue that the no-fault statute allows it to challenge corporate status; only the Attorney General may make such challenges under the BCA.

### 2.   The Primary Jurisdiction Doctrine

Defendants ask the Court to invoke the "primary jurisdiction doctrine" and refer Allstate's case to the appropriate regulatory agencies to determine whether the Rehabilitation Facilities had the proper licenses to lawfully render the services provided Allstate's insureds.

According to Defendants, the Michigan Legislature delegated the authority to investigate claims concerning unlicensed facilities to a regulatory agency under: (1) MCLA §400.713 (which provides that before issuing or renewing a license for an adult foster care facility, the department shall investigate the activities and standards of care as well as perform an on-site evaluation of the facility); (2) MCLA §400.724 (this says a person who believes the Adult Foster Care Licensing Act may have been violated can request an investigation of the adult foster care facility); and (3) MCLA §400.725 (a person aggrieved by the director's decision to deny, suspend, revoke, or refuse to renew a license may appeal the decision to the circuit court).

Primary jurisdiction is a legal doctrine which allows a court to refer issues within the special competence of an administrative agency to that agency for a ruling.  *Reiter v. Cooper*, 507 U.S. 258, 268 (1993) (citations omitted).  The doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties."  *United States v. W. Pac. R. R. Co.*, 352 U.S. 59, 63 (1956).

6

In considering whether a referral should be made, this Court must consider not only the desirability of a specialized agency examining the question and the need for uniform application of the rule, but also whether:

(1)    the issue is within the conventional expertise of judges;

(2)    the issue lies within the agency's discretion or requires the exercise of agency expertise;

(3)    there is a substantial danger of inconsistent rulings;

(4)    a prior application to the agency has been made;

(5)    the issue has already been addressed by the agency;

(6)    judicial economy is served by having the agency decide the question; and

(7)    referral will result in substantial delay and added expense.

*Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 165-66 (E.D. Mich. 2006) (citing *Gilmore v. Sw. Bell Mobile Sys., L.L.C.*, 210 F.R.D. 212, 221 (N.D. Ill. 2001); *Young Soon Oh v. AT & T Corp.*, 76 F.Supp.2d 551, 557 (D.N.J. 1999)).

Based on Allstate's representation that there is other litigation concerning the licenses of the Rehabilitation Facilities and whether they lawfully render services, the possibility exists that there may be inconsistent rulings; judicial economy may be served with an agency determination of licensing issues.

On the other hand, whether the Rehabilitation Facilities were properly licensed is within the conventional expertise of judges; it does not require agency expertise.

In *Psychosocial Serv. Associates, PC v. State Farm Mut. Auto. Ins. Co.*, 279 Mich.App. 334 (2008) ("*Psychosocial Serv.*"), the court disagreed with plaintiff that the Board of Psychology had exclusive authority to consider whether plaintiff's facility and

7

staff members were properly licensed to provide the services rendered.  *Psychosocial Serv.*, 279 Mich.App. at 336.  The appellate court held that the trial court was not required to defer to the board for four reasons: (1) the trial court, not the board, had original subject-matter jurisdiction over a claim for no-fault benefits; (2) defendant did not seek to have plaintiff and its staff members' licenses revoked, an issue squarely within a regulatory agency's sole discretion; (3) defendant sought the interpretation and application of a statute regarding no-fault benefits; and (4) the board did not have specialized knowledge that would make it the preferable forum.  *Id.* at 336-37.

On the authority of *Psychosocial Serv.*, the Court finds that regulatory agencies do not have specialized knowledge which advantage them over courts in: (1) interpreting and applying the licensing statutes; and (2) determining whether the Rehabilitation Facilities were required to be licensed as psychiatric units and/or adult foster care facilities before their services can be considered "lawfully rendered" within the meaning of the no-fault statute.

The Court declines Defendants' invitation to refer this matter to regulatory agencies.

**B.	Were the Services Provided Allstate's Insureds "Lawfully Rendered" Within the Meaning of the No-Fault Statute?**

Allstate relies on *Healing Place* and *Cherry v. State Farm Mut. Auto. Ins. Co.*, 195 Mich.App. 316 (1992), for its proposition that Defendants are not entitled to no-fault insurance benefits because the facilities and the individuals rendering the services must both have a proper license before services can be considered lawfully rendered.  The Rehabilitation Facilities were not licensed as psychiatric units and/or adult foster care

8

facilities.  Therefore, Allstate says they must reimburse Allstate for benefits paid.

Guiding this Court's decision are two provisions of Michigan's No-Fault Statute:

MCLA §500.3107(1)(a) says:

personal protection insurance benefits are payable for . . . [a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

MCLA §500.3157 says:

A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance . . . may charge a reasonable amount for the products, services and accommodations rendered.

### 1.    Did the Rehabilitation Facilities "Lawfully Render" the Services Provided?

*Cherry* read §3107(1)(a) in conjunction with §3157 and concluded that "the Legislature intended that only treatment lawfully rendered, including being in compliance with licensing requirements, is subject to payment as a no-fault benefit."  *Cherry*, 195 Mich.App. at 319-20.  This language in *Cherry* did not impose a licensing requirement in all instances; it merely states that licensing requirements must be met if a license is required to provide certain services.

*Healing Place* shed light on the *Cherry* holding and interpreted §3157 to mean "[i]f both the individual and the institution were required to be licensed and either was not, the 'lawfully render[ed]' requirement would be unsatisfied."  *Healing Place*, 277 Mich.App. at 59.  In *Healing Place*, the court held that the services performed at THP and New Start were not lawfully rendered because THP was not licensed as a psychiatric unit, and New Start was not licensed as an adult foster care facility.  *Id.* at

57-58.

Allstate reads *Cherry* and *Healing Place* together to require that in all instances, both the facility and the individual within that facility providing services must be licensed before services rendered can be deemed "lawfully rendered." This Court disagrees with Allstate's narrow interpretation of these two cases. Further, following Allstate's logic would render the holding in *Hofmann v. Auto Club Ins. Ass'n*, 211 Mich.App. 55 (1995), a nullity.

In *Hofmann*, the Michigan Court of Appeals said *Cherry*'s holding does not mean a service is unlawfully rendered, and not subject to payment as a no-fault benefit, simply because it is excluded from the scope of a service provider's field of practice. *Hofmann*, 211 Mich.App. at 64-65. The court examined each of the services rendered to determine whether it was within the statutory scope of the service provider's license. If a service was outside the scope of the license, it could still be considered lawful and payable as a no-fault benefit as long as it constituted an allowable expense under §3107 of the no-fault act. *Id.* at 65-66.

> Nothing in the language of §3107 suggests that a product or service must be provided by a licensed health-care provider in order to constitute an allowable expense. To the contrary, the focus of § 3107 is on whether a given product or service is "reasonably necessary . . . for an injured person's care, recovery, or rehabilitation," not whether it was provided by a licensed health-care provider.

*Id.* at 66; *see also Psychosocial Serv.*, 279 Mich.App. at 338-39 (services might be lawfully rendered if they are excluded from the scope of the provider's licensed field, but does not constitute the practice of another field without a license) (citing *Hofmann*, 211 Mich.App. at 65).

10

To determine the outcome in this case, the Court relies on *Hofmann* and its interpretation of *Cherry*, and focuses on the services provided the insureds by the Rehabilitation Facilities and the individuals, rather than their licenses or lack of them. Defendants are entitled to no-fault insurance benefits: (a) if the services they provided were reasonably necessary for the insureds' care, recovery, or rehabilitation; and (b) the services provided were:  (i) within the scope of the Rehabilitation Facilities' operating licenses; (ii) rendered by individuals who did not need a license to provide the services; or (iii) rendered by individuals who had the requisite license.

If an individual lawfully rendered services that the facility itself could not render because it required a license to perform that service, Allstate must pay the individual who lawfully rendered services, not the facility.  *See* §3157 (the physician, hospital, clinic, person, or institution that lawfully renders treatment is entitled to a reasonable payment); *see also Allstate Ins. Co. v. A&A Med. Transp. Services, Inc.*, 2007 WL 162477 at *5-6 (Mich.App. Jan. 23, 2007) (while the services were lawfully rendered by licensed individuals, the unlicensed facilities sought payment for the services rendered. §3157 only permits payment to the individual or entity that lawfully rendered treatment) (Kelly, J., concurring).

*Hofmann* dispels Allstate's argument that the *Healing Place* is dispositive. Whether Defendants are entitled to no-fault insurance benefits depends on the services provided Allstate's insureds.  Cases such as these are entirely fact specific, and the *Healing Place* decision does not specify what services the plaintiff there, Edgar Naylor, received.  Nor did *Healing Place* consider services rendered by an individual connected to a facility providing services.  The Court cannot hold as a matter of law that the

11

services provided Allstate's insureds were unlawfully rendered, simply because the Michigan Court of Appeals reached that conclusion concerning the services rendered to Mr. Naylor.

        **a.**        **Was THP Required to be Licensed as a Psychiatric Unit?**

Defendants say THP does not require a psychiatric unit license nor is such license available for the type of facility that it is. According to Defendants, THP does not involuntarily commit patients nor do patients require the daily direction of a physician or mental health professional.

Allstate says THP was a psychiatric unit that was not licensed. Therefore, the services THP provided to insureds were unlawfully rendered. For example, Allstate says the staff at THP helped patients take their medication, which is a service a psychiatric unit performs.

A psychiatric unit is "a unit of a general hospital that provides inpatient services for individuals with serious mental illness or serious emotional disturbance." MCLA §330.1100c(9). A serious mental illness is:

> a diagnosable mental, behavioral, or emotional disorder affecting an adult that exists or has existed within the past year for a period of time sufficient to meet diagnostic criteria specified in the most recent diagnostic and statistical manual of mental disorders published by the American psychiatric association and approved by the department and that has resulted in functional impairment that substantially interferes with or limits 1 or more major life activities. . . . The following disorders also are included only if they occur in conjunction with another diagnosable mental illness:
>
> (a)      A substance abuse disorder.
>
> (b)      A developmental disorder.
>
> (c)      A "V" code in the diagnostic and statistical manual of mental

12

disorders.

MCLA §330.1100d(3).

**Steven Nucci**

A letter from Dr. Frankel dated October 30, 2002 says "Mr. Steven Nucci was admitted to our hospital-based unit, The Healing Place Ltd., located at North Oakland Medical Centers in Pontiac, MI.  He was admitted on 10/18/02."  On October 22, 2002 and October 29, 2002, Dr. Richard L. Weiss, a Licensed Psychologist and Consulting Neuropsychologist, performed a Clinical Neuropsychological Examination on Mr. Nucci. Dr. Weiss said Mr. Nucci received inpatient services at THP.  He diagnosed Mr. Nucci with an Adjustment Reaction with Mixed Emotional Features Disorder, which is listed in section 309.28 of the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition) ("Manual").

**Roger Haines**

A letter dated May 21, 2001 from Dr. Mark W. Shatz, a Licensed Psychologist, says Mr. Haines received inpatient treatment at THP.  Dr. Shatz diagnosed Mr. Haines with: (1) Dementia Due to Head Trauma, which is listed in section 294.1x of the Manual; (2) Personality Change due to Head Trauma, which is listed in section 310.1 of the Manual; (3) Cannabis Abuse, which is listed in section 305.20 of the Manual; and (4) Alcohol Abuse, which is listed in section 303.90 of the Manual.

**Johnny Hamilton**

A Master Treatment Plan submitted by Dr. Shatz for Mr. Hamilton says he was diagnosed with: (1) Alcohol Abuse, which is listed in section 303.90 of the Manual; (2)

13

Personality Change due to Brain Trauma, which is listed in section 294.1x of the Manual; and (3) Cognitive Change due to Brain Trauma, which is listed in 294.9 of the Manual. Mr. Hamilton participated in an in-patient dual diagnosed treatment program at THP.

Importantly, THP's marketing materials say it "provides inpatient hospital services in a highly structured, safe environment, for the multi diagnosed population. It operates as a medical/psychiatric unit licensed by the Center for Substance Abuse Services, State of Michigan. Patients remain under the care of a psychiatrist/addictionologist[.]"

The Court finds as a matter of law that THP meets the statutory definition of "psychiatric unit." To the extent either it or unlicensed individuals provided psychiatric services to Allstate's insureds – services for which a license was required – those services were not "lawfully rendered." Allstate is entitled to reimbursement. However, this holding does not mean all services Allstate's insureds received at THP were unlawfully rendered as a matter of law.

THP does have a residential substance abuse license, which allows THP to provide rehabilitation services, including: (1) counseling; (2) detoxification; (3) job development placement; (4) financial and spiritual counseling; and (5) nutritional education and counseling.

The Patient Information Packet for THP says it provides didactic lectures, video viewing, group therapy, cognitive therapy, neuropsychological and psychiatric evaluations and services, individual counseling, Alcoholic Anonymous support group meetings, Narcotic Anonymous support group meetings, physical therapy, and

14

vocational rehabilitation.

Further, an invoice for Mr. Peregord shows he received consultations and psychological services from Bruce Lessien, a Psychiatrist.  Mr. Hamilton participated in Alcoholic Anonymous meetings and psychotherapy sessions.

In its motion and brief, Allstate does not set forth all evidence concerning all services its insureds received while at THP.  Therefore, the Court is not able to focus on the services provided by THP.  Questions of fact probably exist concerning some services and whether they were lawfully rendered.  If THP provided Allstate's insureds services that were within its operating license; or, individuals lawfully performed services at THP, Defendants are entitled to no-fault insurance benefits.  *See Hofmann*, 211 Mich.App. at 64-66.

The Court declines to hold as a matter of law that all of the services provided at THP were unlawfully rendered and not recoverable under the no-fault statute.

### b. Were New Start and ASF Required to be Licensed as Adult Foster Care Facilities?

Allstate says the services provided by New Start and ASF to the insureds with traumatic brain injuries, behavioral disorders, and psychiatric disorders constituted adult foster care services, and required New Start and ASF to be licensed as adult foster care facilities.

An adult foster care facility "includes facilities and foster care family homes for adults who are aged, mentally ill, developmentally disabled, or physically disabled who require supervision on an ongoing basis but who do not require continuous nursing care."  MCLA §400.703(4).  "'Mental illness' means a substantial disorder of thought or

15

mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life."  MCLA §400.705(5).

Foster care is "the provision of supervision, personal care, and protection in addition to room and board, for 24 hours a day, 5 or more days a week, and for 2 or more consecutive weeks for compensation."  MCLA §400.704(6).

## Supervision

Supervision is:

guidance of a resident in the activities of daily living, including all of the following:

(a)    Reminding a resident to maintain his or her medication schedule, as directed by the resident's physician.

(b)    Reminding a resident of important activities to be carried out.

(c)    Assisting a resident in keeping appointments.

(d)    Being aware of a resident's general whereabouts even though the resident may travel independently about the community.

MCLA §400.707(7).

## Personal Care

Personal care is:

personal assistance provided by a licensee or an agent or employee of a licensee to a resident who requires assistance with dressing, personal hygiene, grooming, maintenance of a medication schedule as directed and supervised by the resident's physician, or the development of those personal and social skills required to live in the least restrictive environment.

MCLA §400.706(1).

## Protection

Protection is:

the continual responsibility of the licensee to take reasonable action to insure the health, safety, and well-being of a resident, including protection from physical harm, humiliation, intimidation, and social, moral, financial, and personal exploitation while on the premises, while under the supervision of the licensee or an agent or employee of the licensee, or when the resident's assessment plan states that the resident needs continuous supervision.

MCLA §400.706(4).

### ASF

Allstate does not provide a description of the type of facility ASF is or evidence of what services it provided Allstate's insureds.  Therefore, the Court cannot find as a matter of law that ASF was required to be licensed as an adult foster care facility.  The Court also cannot find as a matter of law that Allstate is entitled to reimbursement because ASF unlawfully rendered treatment.

### New Start

Allstate presents some evidence in support of its argument that New Start operated as an adult foster care facility although it only had a counseling substance abuse license.  According to Allstate, New Start could only provide substance abuse counseling with its operating license; the license does not allow it to put people in a home.

A letter dated October 8, 1996 says Mr. Clark lives in a structured 24-hour residential living environment at New Start, and his psychiatrist monitors his medications.

Dr. Thomas Kane, a contractual Psychiatrist for New Start, testified at his

deposition on October 5, 2004 that he assumes all patients at New Start are provided with personal care, such as assistance with personal hygiene, grooming, maintenance, and reminders of their medication schedule.

Even assuming New Start operated as an adult foster care facility, the Court cannot find as a matter of law that the services it provided Allstate's insureds qualified as "foster care" services. Indeed, the record shows Ms. Hopkins and Mr. Hamilton received counseling services at New Start.

If: (1) New Start provided Allstate's insureds services that were within its operating license; or (2) individuals lawfully performed services at New Start, Defendants are entitled to no-fault insurance benefits.

The Court declines to hold as a matter of law that the services provided at New Start were unlawfully rendered and not recoverable under the no-fault statute.

### 2. Did Dr. Frankel Have the Proper License to Render the Services He Provided Allstate's Insureds?

Allstate says Defendants are not entitled to no-fault insurance benefits because Dr. Frankel performed psychological and psychotherapy services without the proper license.

### a. Psychological Services

While Defendants concede that Dr. Frankel is not a licensed Psychologist, they say Dr. Frankel is a Certified Addictions Counselor, Registered Social Worker, Certified Clinical Supervisor, Certified Employee Assistance Professional, Certified Brain Injury Specialist, and Certified Compulsive Gambling Counselor who provided substance abuse and addiction counseling.

18

According to Defendants, licensed Psychologists are not the only individuals allowed to provide the type of counseling rendered by Dr. Frankel:

> [The practice of Psychology] does not prohibit a . . . professional counselor, including an alcoholism or drug abuse counselor, whose practice may include preventive techniques, counseling techniques, or behavior modification techniques from practicing his or her profession consistent with his or her training and with a code of ethics for that respective profession.

MCLA §333.18214(5); *See also* MCLA §333.6107(7):

> Treatment [under the Substance Abuse Act] means an emergency, outpatient, intermediate, or inpatient service and care, and may include diagnostic evaluation, medical, psychiatric, psychological, social service care, and referral services which may be extended to an individual who is or appears to be incapacitated.

The Court agrees that an individual does not have to be a licensed Psychologist to counsel patients concerning substance abuse and addiction matters. However, Dr. Frankel's deposition testimony does not create a genuine issue of material fact; he rendered far more than counseling services.

Dr. Frankel testified at his deposition on October 9, 2003 that he provides psychological services to patients, and describes himself as a Psychologist to patients and insurance companies. On August 28, 2003, Dr. Frankel testified that he performs and bills for both psychological and counseling services. On November 23, 2005, Dr. Frankel testified that he billed as a Psychologist.

The Court finds there is no genuine issue of material fact; Dr. Frankel held himself out as a Psychologist, rendered services as such, but was not licensed to render psychological services. Accordingly, Allstate is entitled to reimbursement for the psychological services Dr. Frankel provided Allstate's insureds at New Start: (1) 30

minutes on 1/3/02, 1/8/02, and 2/19/02; and (2) one hour on 2/5/02, 3/12/02, 3/19/02,

3/27/02, 4/9/02, 4/17/02, 4/23/02, 5/1/02, and 7/16/02.

According to invoices, one hour of psychological services is $135.00; 30 minutes

of psychological services is $90.00.  Allstate is entitled to $1,485.00.

### b.    Psychotherapy Services

Allstate provides a Hospital/Clinic form for Mr. Nucci that says Dr. Frankel

provided him psychotherapy services at New Start on an outpatient basis from February

1, 2003 through June 4, 2003.

However, the State of Michigan Department of Community Health Bureau of

Health Professions issued a Notice and Order to Cease and Desist on September 29,

2006.  The Order found Dr. Frankel performed psychotherapy at New Start beginning in

1987, in violation of the Public Health Code:

> NOW COMES the Michigan Department of Community Health,
> hereafter Department, by Melanie Brim, Director, Bureau of Health
> Professions, pursuant to authority under the Public Health Code, 1978 PA
> 368, as amended; MCL 333.1101, et seq, and orders Roman M. Frankel,
> L.B.S.W., hereafter Respondent, to cease and desist from performing
> psychotherapy, in violation of the Public Health Code.
>
> .    .    .
>
> Section 16221(c)(iii) of the Public Health Code, supra, prohibits a
> licensed bachelor's social worker from practicing outside the scope of a
> licensed bachelor's social worker license.
>
> Section 18501(4) of the Public Health Code, supra, prohibits a
> licensed bachelor's social worker from practicing medicine or osteopathic
> medicine and surgery, including, but not limited to, the prescribing of
> drugs, the administration of electroconvulsive therapy, *the practice of
> psychotherapy*[emphasis added], and other advanced clinical skills
> pursuant to section 18501(g)(iii) of the Public Health Code, supra, or the
> administration or interpretation of psychological tests, except as otherwise
> provided in section 18501(f)(iv) of the Public Health Code, supra.

On November 14, 2005, the Department received an allegation that Respondent was practicing outside the scope of his license. An investigation was subsequently conducted by the Department, which determined:

a)   Respondent performed psychotherapy while employed at New Start Inc., in Farmington Hills, Michigan, from 1987 through the present.

b)   Respondent performed psychotherapy while employed at the Healing Place, Ltd., in Farmington Hills, Michigan, from 1994 through the present.

Accordingly,

IT IS HEREBY ORDERED that Respondent shall immediately cease and desist from violating the Public Health Code by performing psychotherapy.

Defendants say the cease and desist order prohibits Dr. Frankel from using the term "psychotherapy" within the context of his certification as a bachelor's level social worker; it had no affect on his use of the term "psychotherapy" within the scope of his certification as a certified addictions counselor.

The cease and desist order prohibits Dr. Frankel from performing psychotherapy, and the form Allstate presents says Dr. Frankel performed psychotherapy services. Dr. Frankel violated the cease and desist order, and Allstate is entitled to reimbursement as a matter of law for the psychotherapy services Dr. Frankel unlawfully rendered Mr. Nucci from February 1, 2003 through June 4, 2003.

**C.   Did the Rehabilitation Facilities Fraudulently Conceal the Fact that They did not Have Psychiatric Unit and/or Adult Foster Care Licenses, or Did Dr. Frankel Fraudulently Conceal the Fact that He was not a Licensed Psychologist?**

Relying on *Allstate Ins. Co. v. Broe*, 2008 WL 3876188 (Mich.App. Aug. 21,

21

2008), Allstate says that while a breach of contract claim has a 6-year statute of limitations period, it is permitted to recover no-fault insurance payments beginning November 1, 1998 (8 years prior to its lawsuit) pursuant to MCLA §600.5855:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

In *Broe*, plaintiff argued that defendants fraudulently billed for services not performed and for services it could not legally render.  *Broe*, 2008 WL 3876188 at *2. The court found plaintiff did not know the claims forms defendants submitted were fraudulent because nothing on the face of the forms revealed any irregularity.  *Id.* at *14.

Defendants rely on the "voluntary payment doctrine" to support their position that Allstate is not entitled to reimbursement based on fraudulent concealment.  "[A] voluntary payment is one made with a full knowledge of all the circumstances upon which it is demanded, and without artifice, fraud, or deception on the part of the payer, or duress of the person, or goods of the person making the payment."  *Pingree v. Mutual Gas Co.*, 107 Mich. 156, 157 (1895).  Defendants say that when they demanded payment, their licenses were a matter of public record, and Allstate knew the Rehabilitation Facilities were not licensed as psychiatric units and/or adult foster care facilities.

While Dr. Frankel testified at his October 9, 2003 deposition that he described himself as a Psychologist to insurance companies, this may not amount to fraudulent

22

concealment of the fact that he was not a licensed Psychologist.  The correspondence Defendants provided Allstate says Dr. Frankel had a Psychologist specialization, but it does not say he was a licensed Psychologist.  Instead, the signature block of the correspondence says he was an Executive Director of New Start, Registered Social Worker, Certified Clinical Supervisor, Certified Addictions Counselor, Certified Brain Injury Specialist, Certified Employee Assistance Professional, and Certified Compulsive Gambling Counselor.

Further, there is evidence that the Rehabilitation Facilities did not fraudulently conceal that they did not have psychiatric unit and/or adult foster care licenses.  The marketing materials Allstate provided to the Court concerning New Start and THP do not say they are licensed psychiatric units and/or adult foster care facilities.  The materials do not specify the type of license New Start has, and they say THP is licensed by the Center for Substance Abuse Services.

By reviewing the face of Defendants' correspondence, Allstate could discover that Dr. Frankel was not a licensed Psychologist and the Rehabilitation Facilities were not licensed psychiatric units and/or adult foster care facilities.  Allstate could have requested Dr. Frankel's Curriculum Vitae and the Rehabilitation Facilities' licenses to confirm those facts.

There appear to be genuine issues of material fact concerning the fraudulent concealment issue, and Allstate is not entitled to judgment as a matter of law.

## IV.    CONCLUSION

Allstate's motion is **GRANTED IN PART AND DENIED IN PART** consistent with

this Opinion and Order.

Dr. Frankel, New Start, THP, ASF, and THP Intensive's Counter-Complaint

proceeds to trial as well, consistent with this Opinion and Order.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  June 24, 2009

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
June 24, 2009.

s/Carol A. Pinegar
Deputy Clerk